# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| USG CORP. and UNITED STATES GYPSUM COMPANY, | ) Adv. Pro. No. 01-08932 <br> ) (Bk. Case No. 01-2094 et al.) <br> ) (USG Corp.) |
| Plaintiffs, | ) |
| v. | ) |
| THE CENTER FOR CLAIMS RESOLUTION, INC., et al., | ) |
| Defendants. | ) |

## MOTION TO REFER ADVERSARY PROCEEDING
## BACK TO THE DELAWARE BANKRUPTCY COURT

Plaintiffs USG Corporation and United States Gypsum Company (the "Plaintiffs" or the "Debtors") hereby file this Motion to refer Adversary Proceeding No. 01-08932 in the Debtors' chapter 11 cases (the "Adversary Proceeding") back to the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Adversary Proceeding was originally filed in the Bankruptcy Court. Subsequently, Judge Wolin withdrew reference for the Adversary Proceeding and consolidated it with similar adversary actions brought in the bankruptcy cases of Armstrong World Industries, Inc. ("Armstrong") and Federal Mogul Corp. ("Federal-Mogul"). The reasons for the withdrawal of the reference and consolidation with other proceedings are no longer applicable, and Judge Wolin is no longer presiding over the Debtors' chapter 11 cases. In addition, the Bankruptcy Court will soon be addressing an omnibus claims objection filed by the Debtors that involve some of the same issues that are involved in the Adversary Proceeding. As a result, it is appropriate at this time to refer the Adversary Proceeding back to the Bankruptcy Court.

In further support of this Motion, the Plaintiffs respectfully represent as follows:

## Background Facts

1. Debtor United States Gypsum Company ("U.S. Gypsum") and certain other corporations, including Armstrong and Federal-Mogul, were formerly members of defendant the Center for Claims Resolution (the "CCR"). The CCR was formed by its members to act as their agent in administering, defending, evaluating, settling and paying asbestos-related claims asserted against such members. Essentially, the CCR settled an asbestos personal injury claim on behalf of all of its members, who paid the CCR their respective share of such settlement. In certain cases, the CCR obtained security to secure the payment obligations of its members. In particular, the CCR obtained from U.S. Gypsum a performance bond (the "Bond") issued by Safeco Insurance Company of America ("Safeco") in the amount of approximately $60.3 million. In connection therewith, Safeco obtained from Debtor USG Corporation an irrevocable letter of credit in approximately the same amount issued by JPMorgan Chase Bank ("JPMorgan Chase") to reimburse Safeco for any payments it might have to make to the CCR on the Bond. The CCR also obtained similar security from Armstrong and Federal-Mogul.

2. On June 25, 2001 (the "Petition Date"), the Debtors commenced their chapter 11 cases. Notwithstanding the commencement of the chapter 11 cases, starting on November 16, 2001 the CCR made demands to Safeco on the Bond allegedly for payment of U.S. Gypsum's portion of asbestos settlements made by the CCR. At or about the same time, CCR was making similar demands on the security provided to it by Armstrong (which had filed for chapter 11 in December 2000) and Federal-Mogul (which had filed for chapter 11 in October 2001). In response, on November 30, 2001, Plaintiffs commenced this Adversary Proceeding in the Bankruptcy Court to enjoin the CCR from drawing on the Bond. Similar

adversary proceedings also were filed by Armstrong and Federal Mogul in their own chapter 11 cases

3. On November 27, 2001, the Third Circuit appointed District Judge Alfred Wolin to oversee the five major asbestos-related bankruptcy cases pending in Delaware, including the chapter 11 cases for the Debtors, Armstrong, and Federal-Mogul. On January 29, 2002, Judge Wolin withdrew the reference for this Adversary Proceeding and the adversary proceedings brought by Armstrong, and Federal-Mogul, and on February 27, 2002 Judge Wolin consolidated the adversary proceedings. Presumably, Judge Wolin withdrew the reference and consolidated the adversary proceedings as a result of the similar nature of each proceeding and the overlapping issues involved, and since he was already presiding over each of the chapter 11 cases for the Debtors, Armstrong and Federal-Mogul

4. Judge Wolin bifurcated the consolidated adversary proceedings into Phase One issues (the CCR's right to draw on its security) and Phase Two issues (the specific amounts the CCR could draw if it prevailed on Phase One issues) On March 28, 2003, Judge Wolin ruled as to Phase One that, with respect to the Debtors, the CCR is entitled to draw on the Bond for certain types of obligations but that Safeco is not required to remit any surety bond proceeds to the CCR at this time. The court also stated that certain settlements that were completed before U S Gypsum's Petition Date likely are covered by the Bond, but that the Bond does not cover settlements that were not yet completed as of the Petition Date

5. In October 2003, before Phase Two of the litigation commenced, certain creditors in the Owens Corning bankruptcy cases brought a motion to recuse Judge Wolin from that case In response, on November 5, 2003, Judge Wolin entered an order staying all proceedings before him in that case and his other asbestos cases, which brought the consolidated

adversary proceedings to a halt. In November 2003, the Debtors and the Official Committee of Unsecured Creditors in this case also brought a motion to recuse Judge Wolin from the USG bankruptcy cases. On May 17, 2004, the Third Circuit ordered the recusal of Judge Wolin from each of his asbestos cases, including the chapter 11 cases of the Debtors, Armstrong, and Federal-Mogul. On September 27, 2004, the Third Circuit appointed this Court to preside over the Debtors' chapter 11 cases, including the Adversary Proceeding.

6. In January 2004, prior to the recusal of Judge Wolin, Armstrong and the CCR settled the Armstrong adversary proceeding. In addition, Federal-Mogul and the CCR recently settled the Federal-Mogul adversary proceeding. On April 11, 2005, the Debtors filed in the Bankruptcy Court an omnibus claims objection (the "Claims Objection") seeking to disallow the proofs of claims filed against U.S. Gypsum by the CCR and various members of the CCR. A copy of the Claims Objection (without exhibits) is attached hereto as Exhibit A. The Debtors are seeking the disallowance of each of the CCR's and its members' proofs of claim on the basis that, among other things, most of such claims relate to settlements not consummated as of the Petition Date or are claims for contribution or reimbursement disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code. As of the filing of this Motion, the Debtors have granted the CCR an extension of the time to respond to the Claims Objection until June 9, 2005.

### Referral of the Adversary Proceeding Back to the Bankruptcy Court is Warranted At This Time

7. 28 U.S.C. § 157(a) provides that the Court may refer "any or all cases under title 11 or any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... to the bankruptcy judges for [its] district."[1] As a result, this Court has

---

[1] The Adversary Proceeding clearly arises in or under the Debtors' chapter 11 cases, or is related to those cases. Among other things, to the extent that Safeco were to pay all or any portion of the Bond, Safeco would draw down the letter of credit issued by JPMorgan Chase to backstop the Bond. JPMorgan Chase may then assert a prepetition

DLI-5916199v4
RLF1-2870373-1

4

discretion to refer the Adversary Proceeding back to the Bankruptcy Court.[2] The Court should exercise that discretion because there is no remaining reason for the Adversary Proceeding to remain in the District Court, and there are good reasons for the Adversary Proceeding to be heard in the Bankruptcy Court

8. Judge Wolin originally withdrew the reference for the Adversary Proceeding to consolidate it with similar adversary proceedings filed by Armstrong and Federal-Mogul when he was presiding over all three chapter 11 cases. Judge Wolin is no longer presiding over any of these cases, and the Armstrong and Federal-Mogul adversary proceedings have been settled. In addition, there has been no action in this Court on the Adversary Proceeding since this Court's appointment to these chapter 11 cases. As a result, there is no prejudice resulting from referral of the Adversary Proceeding back to the Bankruptcy Court at this time.

---

(continued...)

claim in a corresponding amount against USG Corporation in the Debtors' chapter 11 cases. Therefore, since the Adversary Proceeding involves an effort to enjoin actions by the CCR that could otherwise increase the prepetition claims against Debtor USG Corporation's estate, the Adversary Proceeding is indisputably at least "related to" the Debtors' bankruptcy cases. See, e.g., Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original) (citations omitted) ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate").

[2] See Corestates Bank v. Huls Am., Inc., 176 F.3d 187, 195 (3d Cir. 1999) ("Section 157(a) permits the district courts to automatically refer any proceeding over which they have jurisdiction under [28 U.S.C.] § 1334 to the bankruptcy courts."); Phar-Mor, Inc. v. Cooper & Lybrand, 22 F.3d 1228, 1234 (3d Cir. 1994) (finding that district court can refer core and noncore proceedings to bankruptcy court); Bayview Plaza Assocs. Ltd. P'ship v. Town of N.E., Md. (In re Bayview Plaza Assocs. Ltd. P'ship), 209 B.R. 840, 842 (Bankr. D. Del. 1997) ("28 U.S.C. § 157(a) gives the district court the discretion to refer a proceeding arising in or related to a case under title 11 to bankruptcy judges for the district.").

9. Further, now is an appropriate time to refer the Adversary Proceeding back to the Bankruptcy Court. As noted, Judge Wolin completed Phase One of the Adversary Proceeding but had not begun Phase Two. More important, the Debtors' recently filed Claims Objection as to the CCR-related claims raises many of the same issues that are implicated in the Adversary Proceeding. For instance, as noted above, Judge Wolin ruled that the CCR could not draw on the Bond to reimburse itself for U.S. Gypsum's alleged share of settlements that had not been consummated as of the Petition Date. Likewise, in the Claims Objection, U.S. Gypsum asserts that the CCR and its members have no claim in the Debtors' chapter 11 cases relating to settlements that were not consummated prior to the Petition Date, since settlements are not binding on the Debtors. See Exhibit A, pages 18-22. Moreover, both the Claims Objection and the Adversary Proceeding involve much of the same relevant evidence. For instance, in both, it is important to understand, among other things, the historical relationship between U.S. Gypsum and the CCR, the types of settlement protocols entered into by the CCR and various actions taken by the CCR and its members since the Petition Date. Judicial efficiency dictates that the Bankruptcy Court review such evidence and address such issues, which are common to both the Claims Objection and the Adversary Proceeding.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form of Exhibit B hereto, referring the Adversary Proceeding back to the Bankruptcy Court and granting such other and further relief as the Court may deem just and proper.

Dated:  April 29, 2005
        Wilmington, Delaware

Respectfully submitted,

RICHARDS, LAYTON & FINGER, P.A.

_/s/ Paul N. Heath_
Daniel J. DeFranceschi (DE I.D. 2732)
Paul N. Heath (DE I.D. 3704)
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700

-and-

David G. Heiman (OH I.D. 0038271)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939

Brad B. Erens (IL I.D. 6206864)
Dan B. Prieto (IL I.D. 6272888)
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## Certificate

I hereby certify that during the weeks of April 18 and April 25, 2005, counsel for the Debtors contacted counsel for the CCR to determine whether the CCR consented to the relief requested in this Motion. I understand that counsel to the CCR is in the process of consulting with its client regarding the relief requested herein.

_____
Dan B. Prieto

DLI-5916199v4